

# THE ATTORNEY GENERAL

## OF TEXAS

JOHN L. HILL
ATTORNEY GENERAL

AUSTIN, TEXAS 78711

May 24, 1976

The Honorable Raul L. Longoria
Chairman
Senate Special Committee on
    Border Trade & Tourism
State Capitol
P. O. Box 182
Edinburg, Texas   78539

Opinion No. H-825

Re:  Whether Cameron County
may charge a toll across
the county's international
bridge.

Dear Senator Longoria:

As Chairman of the Senate Special Committee on Border Trade and Tourism, you request our opinion on the authority of Cameron County to charge tolls for the county's international bridge and to use revenues from the tolls for purposes other than those set out in article 6795c, V.T.C.S.

Counties are political subdivisions of the state and possess only those powers granted to them by the constitution and laws of the state. Canales v. Laughlin, 214 S.W.2d 451 (Tex. Sup. 1948). In this instance, the source of authority for Cameron County to acquire, own, and operate an international bridge is article 6795c. Pursuant to that article, Cameron County acquired its international bridge in 1961 from a private coporation, Rio Grande Gateway Bridge Corporation.

The County Auditor of Cameron County informs us that fees and tolls charged by the county for use of the international bridge presently produce revenues in excess of the amount required for retirement of the debt created when the bridge was purchased and those expenses for maintenance and operation of the bridge paid directly from the county's bridge revenue fund. These excess revenues periodically are transferred from the bridge fund to the county's general revenue fund.

You ask two questions. First, may Cameron County charge a bridge toll that produces revenue in excess of amounts required to meet expenditures authorized in article 6795c. Second, may Cameron County use "profits" from the bridge to pay for operation of the county government "throughout the county."

Section 3 of article 6795c specifically authorizes the commissioners court to set bridge tolls, providing:

> Any such county thus acquiring by purchase any such toll bridge or bridges shall have power, through its Commissioners Court . . . to fix and to enforce and collect tolls, fees and charges for the use thereof . . . . Such tolls, fees and charges shall be fixed from time to time by the Commissioners Court and collected under its direction . . . and . . . such tolls, fees and charges shall be just and reasonable and nondiscriminatory. . . .

Section 3 goes on to provide that nothing in the statute is to be construed to deprive the State of Texas of its power to regulate and control tolls and charges on international bridges. After reviewing applicable state laws, however, we find that the state has not acted pursuant to this expressly retained power and has not limited the authority, otherwise available under article 6795c, for the commissioner's court to set reasonable fees and tolls for the bridge. Nor has the federal government specifically limited that authority. See International Bridge Act of 1972, 33 U.S.C. §§ 535-535d; H.R. Rep. No. 1303, 92nd Cong., 2d Sess. 4-5 (1972). Absent such state or federal action, it is our opinion that the commissioners court remains responsible under article 6795c for establishing reasonable bridge tolls.

Section 3 of article 6795c provides certain limitations on the minimum toll that may be charged and on the use of revenues from the tolls. In lieu of setting out the lengthy provisions of section 3, the following description of the section is included from City of Roma v. Starr County, 428 S.W.2d 851 (Tex. Civ. App. --San Antonio 1968, writ ref'd n.r.e.):

Section 3 authorizes such county to enforce and collect tolls and fees for use of the bridge, with no free service until the bonds authorized by the statute, together with interest, have been paid and discharged. This section then provides that the tolls and charges shall be sufficient at all times to pay all expenses necessary for the maintenance and operation of such toll bridge; to pay the principal and interest of revenue bonds issued under the statute; to make all sinking fund and/or reserve fund payments agreed to be made in respect of such bonds and payable out of such revenues; and to fulfill the terms of any agreements made with the holders of such bonds. Out of the revenues received in excess of those required for the purposes above enumerated, the commissioners court may in its discretion establish a reasonable depreciation and emergency fund, or retire outstanding bonds, or apply such excess to accomplish any of the purposes of Article 6795c. Id. at 855. (Emphasis added).

The court proceeded to approve a contract in which the county agreed to pay the city an annual sum from bridge revenues for services that the county officials judged were within the purposes of article 6795c and were ones the city could provide more economically than the county, including fire and police protection.

Although section 3 of article 6795c was amended in 1973, the provisions relevant to this inquiry were not changed. Acts 1973, 63rd Leg., ch. 158 at 360. Therefore, in accordance with section 3 of article 6795c and as indicated in the Starr County decision, it is our opinion that revenues from bridge tolls may be used only for purposes provided in article 6795c and may not be used to pay for the general operation of county government. See also V.T.C.S. art. 1015g, § 3(f). However, the transfer of bridge revenues into a county's general revenue fund does not necessarily

mean that the revenues are being used for purposes not authorized by article 6795c. As indicated in that article and the Starr County opinion, purposes authorized under article 6795c are not strictly limited to those enumerated in and required by section 3. For example, section 2 of article 6795c authorizes the commissioners court of a county acquiring a bridge "to do any and all things required, or that may be proper or necessary to the maintenance and operation thereof, and conduct the business thereof, and of rendering the services thereof to the public and to the patrons of said bridge or bridges." See also, e.g., V.T.C.S. art. 6795c, § 5. As indicated above, not all expenses of county government in Cameron County are eligible to be paid from bridge toll revenues. However, expenses must be judged individually. The responsibility for judging what is "required . . . proper or necessary" with regard to the bridge is entrusted under article 6795c to the commissioners court of the county, subject to judicial review. See City of Roma v. Starr County, supra at 855-856.

In summary, we are of the opinion that, subject to the limitations of article 6795c, the commissioners court of Cameron County is authorized to fix and to collect reasonable tolls, fees and charges for use of the international bridge. Revenues from such tolls may be used only for purposes provided in article 6795c. You did not ask and we do not answer whether tolls presently charged by Cameron County are reasonable.

## S U M M A R Y

Subject to the limitations of article 6795c, the commissioners court of Cameron County is authorized to fix and to collect reasonable tolls, fees and charges for use of the international bridge. Revenues from such tolls may be used only for purposes

provided in article 6795c.  Whether a particular expenditure is within the ambit of article 6795c is a question of fact for the initial determination of the commissioners court and subject to judicial review.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb